## HOLMES, ADMR. ET AL. *v.* WHITAKER ET AL.

### [S. C. 31 Pac. Rep. 705.]

1. CUSTOM AND USAGE — CONTRACTS.— It is the settled law that extrinsic evidence of custom and usage is admissible to ascertain the intention and meaning of a contract, when the same cannot be ascertained from the language used, but never to vary or contradict the express terms of the contract, provided such usage or custom was known to the parties at the time of making the contract. *McCulsky* v. *Klosterman*, 20 Or. 108, approved.

2. USAGE AND CUSTOM — ADMISSIBILITY OF EVIDENCE.— In an action to recover money paid on a contract for the purchase of potatoes, on the ground of nondelivery and loss thereof, evidence of a general custom or usage of the purchaser to furnish the boat upon which they are delivered, and to notify the seller when the boat would be ready, and that plaintiff failed in these particulars, is admissible where the purchaser knew of the custom, and the contract is silent as to the consignee and the destination of the potatoes, or as to who should furnish the boat.

3. EVIDENCE TO PROVE CUSTOM — OPINION EVIDENCE.— A witness is competent to show custom or usage, although his knowledge is derived largely from his own experience and course of dealing, when it is sufficiently extensive to enable him to testify to the fact.

4. CONSTRUCTION OF CONTRACT.—Where a contract provided that the potatoes should be delivered "on board of a steamboat as fast as the weather will permit," and that before delivery they should be weighed on the island where they were grown, and the main issue was as to whose duty it was to furnish the boat, it is error for the court to instruct the jury that "it is a fair inference from these provisions that plaintiffs would have some person there to see to the weighing of the potatoes, and to provide for their shipment. If they failed to do so, and defendants were ready and able to deliver them at a suitable time before they were destroyed by the flood, it would be the fault of plaintiffs, and they would be to blame for the nonfulfillment of the contract on the part of defendants." as such instruction made it immaterial which party should furnish the boat.

Polk County : REUBEN P. BOISE, Judge.

Action by W. H. Holmes, administrator of the estate of Robert Ford, deceased, and J. M. Leavens & Co. against George Whitaker and R. H. Bone. · Judgment for defendants.   Plaintiffs appeal.   Reversed.

*Wm. H. Holmes (B. F. Bonham, Daly, Sibley & Eakin,* and *W. W. Page* on the brief), for Appellants.

*Tilmon Ford,* for Respondent.

This is an action to recover the sum of $1,500, paid by plaintiffs to defendants on a contract for the purchase of about ten thousand bushels of potatoes, stored in bins on what is known as Brown's Island in the Willamette River, about two miles above the city of Salem, and which were never delivered to plaintiffs by defendants.   The contract for the sale and purchase of these potatoes was in writing, and is as follows:  "KNOW ALL MEN BY THESE PRESENTS : That·Geo. Whitaker and R. H. Bone, hereinafter known and designated as the party of the first part, and Robert Ford and J. M. Leavens & Co., hereinafter known as the party of the second part, have this day contracted to and with each other as follows, to wit: The said party of the first part, in consideration of the terms and conditions hereinafter mentioned, has this day

sold to the said second party all the merchantable pota-
toes now stored and raised by said first party in the year
1889 on what is known as Brown's Island, situated in
Polk County, Oregon, and situated in a southwesterly
direction from Salem, Oregon. The said first party
agrees to and with said second party to deliver on
board of a steamboat, as fast as the weather will permit
of such delivery, said potatoes, properly sacked and
sewed; the sacks and twine to be furnished by the said
second party free of charge. It is further agreed between
the parties hereto that all of said potatoes shall be, before
delivery of the same on board of boat, weighed on said
Brown's Island, and that one pound on each sack of said
potatoes so delivered as aforesaid shall be allowed and
deducted from the actual weight of each sack of said
potatoes.

"The said party of the second part, in consideration
of the terms and conditions hereinbefore mentioned,
agrees to pay for said potatoes to the said first party,
delivered as aforesaid, the sum of seventy-five cents per
bushel, payable as follows: Seven hundred dollars pay-
able this twenty-third day of December, 1889, eight hun-
dred dollars on the twenty-eighth day of December, and
the balance of the purchase price of said potatoes payable
within five days from the time all of said potatoes are
delivered on board of boat."

The complaint, after setting out the contract as above,
alleges that plaintiffs complied with all the terms of the
contract on their part to be performed, but that defend-
ants failed and neglected to deliver any of the potatoes,
as in the contract stipulated, but suffered them to be
wholly lost and destroyed by a flood or high water, and
hence they demand judgment for the money paid on the
contract.

The answer denies all the allegations of the complaint,
except the making of the contract, the payment of the
$1,500, and the loss of the potatoes by flood or high water;
and as a separate defense, in substance avers that at the

XXIII. Or.—21.

time the contract was made, for a long time prior thereto and ever since, it was and is the usual custom of the dealers in said property, and of the producers and purchasers of potatoes on Brown's Island, and along the Willamette River in the vicinity thereof, for the purchaser to furnish the steamboat and notify the seller when to have the potatoes ready for shipment, and for the seller to await such notification before sacking and preparing the potatoes for shipment; that the contract in this case was made with reference to such usage and custom, which was well known and recognized by plaintiffs; that it was the duty of plaintiffs to furnish a steamboat upon which the potatoes could be shipped, and notify defendants when to prepare them for such shipment, but that they failed and neglected so to do, in consequence of which the potatoes were destroyed by a flood or high water in February, 1890, without the fault or negligence of the defendants, by which they were damaged in the sum of $6,225, for which they demand judgment against the plaintiffs. The allegations of the answer were put in issue by the reply, and a trial resulted in a judgment in favor of the defendants for $2,300, from which plaintiffs appeal.

BEAN, J. (after stating the facts).—Brown's Island, referred to in the contract between the parties to this suit, is situated in the Willamette River about two miles above Salem, and there is no way of getting produce therefrom except by one of the steamboats plying on the river; nor is there any warehouse or building on the island at the boat landing in which such produce can be stored awaiting shipment, but it must be put on board a boat immediately after its delivery at the landing in order to protect it from damage by the elements.

1. On the trial of this action, defendants gave evidence tending to show that it is and was, at the time of the contract in question, the general custom or usage for the purchaser of produce on the island, and especially

potatoes, to furnish the steamboat for the shipment of such produce, and notify the seller of the time the boat would be at the island to receive it, and for the seller to await such notice before preparing and delivering the produce at the landing for shipment, and that such contract was made with reference thereto; and that plaintiffs knew of this custom and usage at the time the contract was made, but failed and neglected to furnish the boat or notify defendants to prepare the potatoes for shipment until after the flood or high water by which the potatoes were lost or destroyed. Plaintiffs contend this evidence is incompetent and immaterial, because it seeks to import into the written contract terms and conditions not contained therein.

We begin by saying that where the terms of a contract are explicit and free from ambiguity, it is always to be construed according to the strict, plain, common meaning of the words used, and proof of a custom or usage inconsistent with its terms, is inadmissible either to contradict or qualify its provisions, for in such case the terms of the contract are evidence of the intention of the parties to avoid the effect of such usage or custom: *Brown* v. *Foster,* 113 Mass. 136 (8 Am. Rep. 463); *Collender* v. *Dinsmore,* 55 N. Y. 200 (14 Am. Rep. 224); *Atkinson* v. *Allen,* 29 Ind. 375. Custom and usage are resorted to only to ascertain the intention and meaning of a contract when the same cannot be ascertained from the language used, but never to contravene the express terms or stipulations: *McCulsky* v. *Klosterman,* 20 Or. 108 (25 Pac. Rep. 366). But where a contract is silent as to details, custom and usage may be resorted to for the purpose of supplying such details or annexing incidents to the contract, provided the details or incidents sought to be imported into the contract are not inconsistent with its express terms, or any necessary implications from those terms, and do not contravene the positive requirements of the law or some principle of public policy: *Barlow* v. *Lambert,* 28 Ala. 709 (65 Am. Dec. 374); *Sawtelle* v. *Drew,* 122 Mass.

229; *Dawson* v. *Kittle*, 4 Hill, 107; note to *Wigglesworth* v. *Dallison*, 1 Smith's Leading Cases (7 Am. ed.), 904.

"It has long been settled," says Baron PARKE, in *Hutton* v. *Warren*, 1 Mees & Wels. 466, "that in commercial transactions, extrinsic evidence of custom and usage is admissible to annex incidents to written contracts, in matters with respect to which they are silent. The same rule has also been applied to contracts in other transactions of life in which known usages have been established and prevailed, and this has been done upon the principle of presumption that in such transactions the parties did not mean to express in writing the whole of the contract by which they intended to be bound, but a contract with reference to those known usages." So in *Sawtelle* v. *Drew*, 122 Mass. 229, LORD, J., says: "A custom, within the meaning of the law, if general, is incorporated into and becomes a part of every contract to which it is applicable; if local, of every contract made by parties having knowledge of or bound to know its existence."

2.   The contract in question here is silent as to the consignee or place of destination of the potatoes, and as to who should procure or furnish the boat upon which the same were to be delivered or shipped; hence proof of usage or custom, if any prevailed, is admissible to supply these details upon which the contract is silent, if such usage or custom was known to the plaintiffs at the time the contract was made.

3.   Objection was also made to the competency of the testimony of witnesses Herron and Whitaker, as evidence tending to prove custom or usage, because their knowledge was derived largely from their own experience and course of dealing. Both these witnesses testified that it was the general custom for the purchaser of produce on Brown's Island to furnish the boat upon which the same was to be shipped, and give notice to the seller when the boat would be at the island to receive the freight, and for the seller to await such notice before putting the produce on the river bank for shipment. Herron was and had been

for about three years an agent of some steamboat company at Salem, and had purchased and shipped potatoes from Brown's Island, and from his own experience and observation of the practice of others, he was able to testify as to such custom or usage. Whitaker had lived on Brown's Island for about ten years, during which time he had been engaged in raising and selling potatoes, and his evidence was to the same effect. This evidence was, we think, competent. Custom or usage is a matter of fact, and not of opinion. It is proved, not by witnesses testifying as to their opinions, but as to its existence from facts within their own knowledge, obtained by observation of what is practiced by themselves and others in the trade or business to which it relates: Lawson on Usage, § 55; *Haskins* v. *Warren*, 115 Mass. 535; and it is no valid objection to the competency of a witness, that his knowledge is derived from his own business, if the knowledge thus derived is sufficiently extensive to enable him to testify to the fact of usage or custom: *Hamilton* v. *Nickerson*, 13 Allen, 351.

4. The court, after instructing the jury in effect that by the terms of the contract the title to the potatoes in question remained in defendants, until sacked, weighed, and delivered aboard a steamboat by them, and consequently they must bear the loss, unless such delivery was prevented and loss sustained through the fault or negligence of the plaintiffs, in which case defendants would be entitled to recover the balance due on the purchase price less the cost of sacking and delivering them on the boat, proceeded to give the following instruction: ''In this case, under the contract in question, there is no designated consignee of the potatoes, which were the subject of the contract. It is provided therein that they were to be weighed on Brown's Island before they were received. It is a fair inference from these provisions of the contract that the plaintiffs would have some person there to see to the weighing of the potatoes, and to provide for their shipment. If they failed to do so, and the

defendants were ready and able to deliver them at a suitable time before they were destroyed by the flood, it would be the fault of the plaintiffs, and they would be to blame for the nonfulfillment of the contract on the part of the defendants.

We do not think the contract in question, by its terms, or by any reasonable inferences therefrom, imposed an obligation upon the plaintiffs to have a person present at the time of the shipment to see to the weighing of the potatoes. By the express terms of the contract, defendants were to sack and deliver the potatoes aboard the boat as fast as the weather would permit. This duty, with which plaintiffs had nothing to do, was, according to the opinion of the trial court, an obligation assumed by them as a condition precedent to a complete sale. From the language of the contract, in the absence of a known custom or usage governing in such cases, it would seem to be the duty of defendants to deliver the potatoes aboard some steamboat to be selected by them plying on the river as a common carrier as soon as it could safely be done, and when so delivered their contract would be fulfilled and the title vest in the plaintiffs. The weighing of the potatoes was to be done before the delivery aboard the boat, and as defendants were to make such delivery as soon as the weather would permit, they were necessarily authorized to do the weighing themselves, if plaintiffs did not see proper to have some one present to assist in the matter. Whether the weighing so done by defendants would be conclusive between the parties as to the quantity, is immaterial at this time; but it is clear that the failure of plaintiffs to have a person present to see to the weighing and shipment was not a violation of the contract on their part, and would not give defendants a right of action against them for the loss of the potatoes.

Nor can we agree with counsel for defendants in his contention that this was a harmless error. The main question at issue between the parties to this action is, whether there was a general custom or usage known to

plaintiffs at the time the contract was entered into, which made it their duty to furnish the boats upon which the potatoes were to be delivered. Upon this question the evidence was conflicting, and yet, by the instruction referred to, it was taken from the jury, and they were in effect told to find for defendants, whether such custom existed or not, and without regard to who was to furnish or procure the boat for the shipment of the potatoes, for it was conceded that plaintiffs did not at any time prior to the loss of the potatoes have anyone on Brown's Island to see to the weighing or shipment, and for this failure the court instructed the jury that plaintiffs were responsible for the non-fulfillment of the contract, and, as a consequence, for the loss of the potatoes. Although the jury may have been satisfied from the evidence that there was no custom or usage known to plaintiffs requiring them to furnish the boat upon which the potatoes were to be delivered, yet under this instruction they were necessarily bound to find for defendants, because plaintiffs did not have some person to see to the weighing and shipment of the potatoes.

The other assignments of error we do not deem it necessary to consider at this time, as they will probably not arise on another trial.

Judgment reversed and a new trial awarded.