## SMITH *v.* INTERIOR WAREHOUSE CO.

[94 Pac. 508; 95 Pac. 499.]

REFORMATION OF INSTRUMENTS—GROUNDS—MUTUALITY OF MISTAKE.

1. Equity will not reform a contract on the ground of mistake, unless it is shown that the mistake was mutual.

SAME—EVIDENCE.

2. In a suit to reform a contract, evidence *held* insufficient to show a mutual mistake in the terms of the agreement, as to the persons liable thereon.

SAME.

3. In a suit to reform a contract for the sale of wheat, evidence *held* to show that it was the intention of the parties to the agreement, that the purchaser was to receive on the purchase, wheat that was then stored in other warehouses than the defendant's, and that the writing should have so specified.

From Wheeler: HENRY J. BEAN, Judge.

This is a suit by E. L. Smith against the Interior Warehouse Co. to reform two contracts for the sale of 27,500 sacks of wheat by plaintiff to the defendant. From a judgment in favor of defendant, plaintiff appeals.

REVERSED.

The case was submitted on briefs, under the proviso of Rule 16: 50 Or. 580.

For appellant there was a brief over the name of *Mr. James A. Fee.*

For respondent there was a brief over the name of *Lowell & Winter.*

MR. JUSTICE EAKIN delivered the opinion of the court.

This is a suit to reform two contracts. On September 8, 1904, plaintiff and defendant, by its agent, A. L. Knight, made an agreement as to the sale of a large amount of wheat by Smith to the defendant, the terms of which sale Knight attempted to embody in a printed form used by defendant in such purchases. The same was signed by the plaintiff, and is in the following words, viz. :

"Buyer's Copy (forwarded to Portland Office). Grain Contract.

Pendleton, Or., Sept. 8, 1904.

I have today sold to the Interior Warehouse Company for delivery on, or before, Nov. 1, 1904, twenty-seven thousand five hundred (27,500) sacks of Red Chaff wheat, at the price of seventy (70) cents per bushel in the warehouse of the Interior on W. & C. R. R., and hereby acknowledge having received on said sale, as earnest money, the sum of one ($1.00) dollar. It is agreed and understood that the price of seventy (70) cents mentioned is for No. 1 Red Chaff wheat, equal to the Portland Chamber of Commerce standard now in effect, but off-grade wheat of the same variety will be received against this sale at the customary discount for such wheat.

E. L. Smith, Seller.

Confirmed:

Interior Warehouse Company,
By A. L. Knight, Agent."

It was understood that the wheat therein mentioned was not alone Smith's crop, but that portions of it would be delivered by other farmers, and payment therefor made to them accordingly.

At the time of signing this writing, neither the parties to deliver the wheat, nor the amount by each to be delivered, had been named; but plaintiff went out to make up the list therof, and in doing so he found that there was more than 27,000 sacks, and asked Knight to take 10,000 more. On the next morning, Smith signed an additional writing for that amount of wheat, in the same form and with the same date as the first one; and it is claimed by the plaintiff that he did not intend to make these contracts personal liabilities of his own beyond the amount of his individual wheat, but only a pool, in which defendant should look to the person named for the amount of wheat specified to be delivered by him. By this suit plaintiff seeks to have the contract so reformed as to express only such liability.

1. What was said at the time of making the agreement is not very fully disclosed by the evidence, but it appears therefrom that plaintiff went to Knight, and, having found the price of wheat to be 69 cents, said that he had some wheat he wanted to sell at 70 cents. Knight immediately ascertained from the defendant that he might pay 70 cents, and he so informed plaintiff, who agreed to that price, whereupon the writing was signed. The next morning, at the time of signing the second writing, plaintiff furnished to Knight a list of 15 names, with the amount of wheat to be delivered by each, amounting to 40,700 sacks. Upon the list furnished by Smith were the two items: "E. L. Smith and A. Laing, 10,000 sacks," and "C. J. Smith, Laing, and Hartnett, 10,000 sacks." The evidence shows that these men were not in partnership or joint owners of the wheat, and that no one of them was intending to sell or become liable for more than his individual wheat. James Laing, included with "Smith, Laing, and Hartnett, 10,000 sacks," was interested in only one-third of that amount, and had given no authority to plaintiff to sell. Creswell's authority to Smith was for "4,500 or 5,000 sacks," which probably would not bind him for more than 4,500 sacks, if he had no more. It is also questioned whether McRae authorized the sale of his wheat. So it is plain to be seen that no contract could be carved out of these facts as they were disclosed at the time, other than a personal contract of the plaintiff, and it is apparent that Knight did not understand that he was dealing with any one but plaintiff, nor did Smith understand he was creating a personal obligation upon these parties in favor of defendant, as his list contained 40,700 sacks, being 3,200 sacks more than the contracts called for. When he signed the first contract, the amount thereof was not determined by including any particular crops, and in the second contract he did not determine which crops were to be bound, and Knight says that when he told plaintiff that McRae was not going to

deliver his wheat, Smith replied that he had plenty of wheat to cover it. All this goes to show that Smith did not consider he was giving defendant the obligations of these people. There can be no dispute as to the law that equity will entertain jurisdiction to reform a contract on the ground of mistake; but, to entitle plaintiff to such relief, the mistake must be shown by satisfacory proof, and that it was mutual: *Stein* v. *Phillips*, 47 Or. 545 (84 Pac. 793). It is not a sufficient basis for relief to establish that the writing does not express an agreement as understood by one of the parties to it. Equity will not reform the writing where the mistake was not mutual: *King* v. *Holbrook*, 38 Or. 452 (63 Pac. 651). No mutual mistake has been shown in the terms of the agreement as expressed in the writing, as to the persons liable thereon, and plaintiff is not entitled to the relief asked in relation thereto.

2. Plaintiff further claims that the agreement between himself and Knight provided that defendant would receive thereon wheat that was already stored in warehouses other than defendant's, but that, by mistake, the writing specified that the wheat was to be delivered by Smith, at the Interior warehouses on the Washington & Columbia River Railroad; and he asks that the contract be corrected accordingly. Knight admits that he was to receive such wheat as was then stored in other warehouses than defendant's. In his testimony he says that there was conversation in regard to a part of the wheat being already stored in other warehouses than defendant's. And he was asked:

"Q. Then, if some part of that wheat was stored in some other warehouses at that time, and you understood that, then you did not make this contract express all the terms and conditions of the sale?

A. No, sir.

Q. Because you were to accept wheat at that time that was stored elsewhere?

A. Yes, sir.

Q. Did you understand at that time whose wheat it was that was stored in some other warehouse than yours?
A. No, sir.
Q. You did not know?
A. No, sir; not at that time.
Q. Now, you are positive that Mr. Smith did not tell you at that time whose wheat it was that was stored in some other warehouse than yours?
A. I don't think that he knew—I don't think he knew it then. It was my understanding."

This shows that such was the agreement, and therefore the contract did not express the intention of the parties as to where the wheat should be received. The list of the parties who were to furnish the wheat included Nelson for 1,500 sacks, and Taylor for 2,600. It is claimed that Knight had erased Taylor's name from the list, but he insists that he had nothing to do with the names, except in determining whose wheat to ship, and Smith says that, although Knight made some objection to Taylor's wheat, it was turned in as part of the wheat sold. Part of Nelson's wheat and all of Taylor's was already stored in a warehouse not defendant's. Nelson's was received by Knight, but he refused to accept Taylor's, and it appears that plaintiff also tendered Martin's wheat, 1,000 sacks, not included in the list, but owned by plaintiff, which was stored in another warehouse than defendant's; and both of these crops were refused by defendant because they were so stored.

3. It is clear that it was the intention of the parties to the agreement that the defendant was to receive on the purchase wheat that was then stored in other warehouses than defendant's and the writing should have so specified. To that extent the decree of the lower court will be reversed, and the contract reformed by adding to each of the contracts set out in the complaint, after the words, "in the warehouse of the Interior on W. & C. R. R.," the words "provided that wheat already stored in other warehouses than defendant's shall be received by defendant

where stored"; and a decree will be rendered here accordingly. REVERSED.

---

Decided May 12, 1908.

## ON PETITION FOR REHEARING.

[95 Pac. 499.]

Opinion by MR. JUSTICE EAKIN.

Counsel for defendant insists that the force of the language quoted in the opinion from the testimony of witness Knight, relating to the agreement to receive wheat stored in other warehouses than defendant's, is explained away by the redirect examination; but we do not so consider it. In the testimony quoted the witness is referring to the time of the signing of the contract, and at that time, although he knew some of the wheat was so stored, he did not know whose wheat it was, and thought Smith did not know. Smith testifies that at the first conversation with Knight it was understood that part of the wheat was in other warehouses than defendant's.

We believe the testimony justifies the conclusion reached, and the petition is denied.

REVERSED: REHEARING DENIED.

---

· Argued February 11, decided March 3, rehearing denied May 12, 1908.