Argued December 15, decided December 23, 1913.

## BARNARD & BUNKER *v.* HOUSER.

(137 Pac. 227.)

**Customs and Usages—Evidence—Sufficiency.**

1. In proving a custom it is necessary to show, not only that it is universal in the locality where it obtains, but also that it was known to the parties contracting with reference thereto, or is of such general acceptance that knowledge thereof is necessarily implied.

**Customs and Usages—Effect—Interpretation of Contract.**

2. Custom is used in evidence only as a means of interpretation of a contract, and not to import into it new terms.

**Sales—Construction of Contract—Time for Payment of Price.**

3. A contract to sell a quantity of barley and to deliver it f. o. b. steamer between certain dates, being merely executory, denotes that tender of payment must be made contemporaneously with delivery of the goods.

**Customs and Usages—Construction of Contract—Effect.**

4. Under a contract to sell a quantity of No. 1 barley, Portland Standard, and to deliver it f. o. b. steamer, custom cannot be relied on to show a further agreement that the seller must furnish a certificate

that the barley is of the quality provided in the contract; such an agreement being in contradiction of the contract making payment of price and delivery dependent covenants.

**Pleading—Matters of Fact or Conclusions.**

5. An allegation in the complaint that defendant has failed to deliver barley sold to plaintiff in accordance with the terms of the contract, without showing wherein the delivery failed to comply with the contract, does not state facts, but merely a conclusion.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

The plaintiff, Barnard & Bunker, a California corporation, brings this action against M. Houser, a grain dealer residing in this state.    The complaint alleges:

"That on or about November 7, 1911, plaintiff contracted and agreed with defendant to buy of him, and the defendant contracted to sell to the plaintiff, 150 tons of No. 1 feed barley, Portland Standard, at the price of $1.65 per hundred pounds, and at said time defendant further contracted and agreed to deliver said barley f. o. b. steamer at the City of Portland, Oregon, for shipment between November 15, 1911, and December 15, 1911."

The complaint also alleges, in substance, that the term "No. 1 feed barley, Portland Standard," was understood by plaintiff and defendant to mean a quality equal to samples of No. 1 feed barley approved by the Chamber of Commerce, Portland, Oregon. There is in the initial pleading this allegation:

"That at the time said contract was made it was and is now the custom and usage of trade and commerce carried on in said City of Portland and the State of Oregon, and particularly among those engaged in the business of buying and selling grain thereat and with others, that upon delivery of barley sold upon contract calling for 'No. 1 feed barley, Portland Standard,' the seller is required to furnish the buyer with a certificate issued by the official inspector of the said

68 Or.—16

Chamber of Commerce or other disinterested and competent person to the effect that the barley delivered is of the quality provided in the contract before the buyer is required to pay for same, and said custom and usage was at all times well understood between the plaintiff and defendant herein."

It is agreed that the contract was modified by mutual consent so that delivery should be made free on board dock at Portland, Oregon, instead of on the steamer. The complaint further alleges, in substance, that the contract was further modified so that the defendant had the option either to furnish the certificate already mentioned, or a sample of the barley showing the same to be as provided in the contract; but this modification is denied. The complaint closes with this averment: "That defendant has failed, neglected, and refused to deliver said barley to plaintiff in accordance with the terms of said contract and defendant wholly failed, neglected, and refused to furnish plaintiff with either the said certificate or sample mentioned in paragraph 6 of this complaint, and plaintiff has thereby lost profits and has sustained damage in the sum of $450."

. The making of the contract is admitted, except that it is denied that the barley was to be Portland Standard. The alleged custom is also denied, as well as the failure to deliver. The court heard the same without a jury and made findings of fact and conclusions of law which are identical with the complaint. From a judgment in favor of the plaintiff in the sum of $300, the defendant appeals.        REVERSED.

For appellant there was a brief and an oral argument by *Mr. Samuel B. Huston.*

For respondent there was a brief and an oral argument by *Mr. William W. Banks.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. In proving a custom it is necessary to show not only that it was universal in the locality where it obtains, but also that it was known to the parties contracting in reference thereto, or that it was of such general acceptance that knowledge of the same would be necessarily implied. There is no testimony in the record showing that the custom was universal. On the contrary, every witness speaking on the subject says that by far the greater part of the grain handled at the port of Portland was marketed without any certificate whatever, and the testimony further fails to show that the defendant knew of the alleged custom. The utmost that is shown by the testimony concerning plaintiff's knowledge is that on two occasions a certificate of the quality of the grain sold was furnished.

2. Custom is used in evidence only as a means of interpretation of a contract, and not for the purpose of importing into it new terms: *Holmes* v. *Whitaker,* 23 Or. 319 (31 Pac. 705); *Savage* v. *Salem Mills Co.,* 48 Or. 1 (85 Pac. 69, 10 Ann. Cas. 1065).

3. The contract pleaded was merely an executory one for the sale of the commodity named. It denotes that the tender of payment must be made contemporaneously with the delivery of the goods. Payment and delivery in such contracts are dependent covenants.

4. It does not imply that the seller shall do the further act of furnishing a certificate of the quality of the goods. Having alleged that the plaintiff agreed to buy and the defendant agreed to sell the grain in question, it would be a contradiction of that express contract if custom could be relied upon to dispute its plain terms of payment and say that, although one has agreed to buy and the other to sell, yet custom will eliminate the feature of mutual dependent covenants and make them successive.

5. Still further, the allegation of the complaint, reiterated as a finding of fact, is "that defendant has failed, neglected, and refused to deliver said barley to plaintiff in accordance with the terms of said contract." This does not state facts, but merely a conclusion. If the plaintiff would recover, he should allege facts showing wherein the delivery did not comply with the terms of the contract, so that the court could judge whether compliance had been accomplished or not. In this sense the findings of fact do not justify the judgment.

For these reasons, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.