Argued May 1, reversed May 23, 1916.

## INTERIOR WAREHOUSE CO. *v.* DUNN.*

(157 Pac. 806.)

**Contracts—Actions for Breach—Pleading—Complaint.**

1. Where a contract is definite, certain, free from ambiguity, it is to be construed according to the common meaning of the words used.

**Customs and Usages—Varying Contract.**

2. Where a contract is free from ambiguity, a custom or usage inconsistent with its terms cannot be interposed to contradict or qualify its provisions, the terms of the contract being evidence of an intention to avoid the effect of such usage or custom.

[As to admissibility of evidence of peculiar significance of word in locality where instrument was executed, see note in Ann. Cas. 1916C, 655.]

---

*Generally on the question of right to rely on representations of agents, see note in 37 L. R. A. 593. And where one party's obligation is not definite and certain, see note in 1 L. R. A. (N. S.) 445.

REPORTER.

**Customs and Usages—Effect on Contracts.**

3. It is for the court to determine to what extent, if any, a custom or usage relied upon shall modify or control a contract.

**Customs and Usages—Varying Sale Contract.**

4. In an action on a contract for sale of wheat, it not being alleged that there was an agreement that the plaintiff would not enforce the contract, but merely that there was a false representation by its agent that it would not exact the delivery, all oral negotiations or stipulations preceding or accompanying the execution of written agreement being merely merged in it, no contradiction of its legal effect by parol stipulations, preceding or accompanying its execution, are admissible.

**Pleading—Admissions—Effect.**

5. In an action on a contract for the sale of wheat, where the answer affirmatively admits the execution of the instrument set forth, it is not a mere admission of the signing of the paper, but that such an agreement as the plaintiff alleges to have been made was in fact executed.

**Contracts—Actions for Breach—Grounds—Fraud.**

6. A written agreement, based on a consideration, cannot be questioned in a law action for alleged fraud or deceit affecting its execution, except upon a denial of its execution amounting to a plea of *non est factum*, or, if it is an unsealed instrument, *non assumpsit*, since the admission by the plaintiff of the execution of the instrument will bind him.

**Evidence—Fraud—Specialty.**

7. It is not competent for a defendant, in an action at law on a specialty, to plead that the instrument was obtained by false representations.

**Evidence—Fraud—Execution of Contract.**

8. Where a defendant's signature was obtained to an instrument he did not intend to sign, and the fraud or deceit affects the execution thereof, the fraud can be alleged at law.

**Evidence—Admissions—Effect.**

9. In an action on a contract for the sale of wheat, where the defendant alleged fraud in obtaining the instrument, and that he relied on a representation of the plaintiff's agent that the terms of the writing would not be enforced, his statement that, prior to the signing of the alleged agreement, the agent falsely represented that if the defendant did not raise the 3,000 sacks stated, the plaintiff would not exact the delivery amounts to an admission that he knew the provision binding him to deliver 3,000 sacks was embraced in the agreement.

**Pleading—Construction—Ambiguity.**

10. In construing a pleading in a case of doubt, when considered on demurrer, that construction should be given to the language which is most favorable to the opposite party and against the pleader.

80 Or.—34

Pleading—Fraud—Showing Facts.

11.    When fraud is relied upon, facts showing it must be clearly alleged.

Sales—Actions for Breach—Pleading Defenses.

12.    In an action at law on a contract for the sale of wheat, where the defendant admitted the execution of the instrument, and alleged fraud in reducing the contract to writing, in that he agreed to deliver all wheat grown with certain deductions for feed and seed, while plaintiff's agent secured his signature to an agreement to deliver a stated amount, telling him that the plaintiff would not exact delivery of the full amount if he did not raise it, the answer did not contain sufficient facts to constitute a defense to the action of law, or justify a conclusion of fraud on the part of the plaintiff.

Reformation of Instruments—Mutual Mistake—Remedy.

13.    Where mutual mistake is made in the framing of a contract, and no fraud appears, the remedy, if any, is by a suit to reform the written instrument.

Principal and Agent—Pleading—Contract by Agent.

14.    In an action on a contract for the sale of wheat, an answer, setting up a release or modification of the contract made by certain persons alleged to have been agents of the plaintiff, which contained no allegation that they were general agents of the plaintiff, or that they had authority to make such release or modification, or that the plaintiff knew of the proceeding, was insufficient.

Principal and Agent—Action—Pleading.

15.    In an action by or against a principal, on contracts executed through his agent, the contract may be declared on, either as having been made by the principal or by him through an agent.

Sales—Actions for Breach—Defenses.

16.    In an action on a contract for the sale of wheat, an answer, alleging a release or modification of the contract made by persons alleged to have been agents of the plaintiff, being in the nature of an accentuation of another claim that the contract was other than as written, was not sufficient as a defense in itself.

From Gilliam: DAVID R. PARKER, Judge.

In Banc.    Statement by MR. JUSTICE BEAN.

This is an action by the Interior Warehouse Company, a corporation, against Edward Dunn for damages for a breach of the following contract:

"Grain Contract.

"Condon, 25 May, 1914.

"I have to-day sold to the Interior Warehouse Company for delivery on or before 15th September, 1914,

three thousand (3,000) sax net weight of Fortyfold wheat, at the price of seventy (70) cents per bushel net weight in the warehouse of Interior Warehouse Co. at Condon, and hereby acknowledge having received on said sale, as earnest money, the sum of One 00-100 ($1.00) dollars.

"It is agreed and understood, that the price of seventy (70) cents mentioned is for No. 1 Fortyfold wheat, equal to the Portland Chamber of Commerce standard now in effect, but off-grade wheat of the same variety will be received against this sale at the customary discount for such wheat.

"EDWARD DUNN,<br>"Seller.

"Confirmed:

"INTERIOR WAREHOUSE COMPANY,<br>"By A. B. ROBERTSON, Agent."

Defendant delivered to plaintiff 1,587 sacks of wheat, and for a failure on his part to deliver the balance the plaintiff company claims damages in the sum of $446.85. Defendant admits the "execution and signing" of the instrument set forth in the complaint, and affirmatively pleads the facts to be in effect as follows: That plaintiff and defendant contracted with reference to a custom prevailing in the vicinity of Condon, recognized for more than five years by farmers and grain buyers, to the effect that feed and seed for the following seasons be excepted from any estimate of grain sold before harvest, where the language of the contract is not plain or is silent as to details. Defendant further pleads:

"That on the 25th day of May, 1914, defendant orally agreed with said plaintiff, through its agent, A. B. Robertson, to sell to plaintiff all the wheat he had to spare out of crop raised on the James Dunn and Edward Dunn ranches in Gilliam County, Oregon, which at that time, after deducting seed and feed for said ranches and livestock used thereon, was estimated

at 3,000 sacks, delivery to be made during the month of August, 1914. That as soon as said agreement was perfected, the said agent for plaintiff, A B. Robertson, was instructed to draw up said contract in writing in accordance with the terms of said agreement. That this defendant had, prior to said 25th day of May, 1914, divers business dealings with said agent, and had much faith and confidence in his honesty, and relied on him drawing said contract as agreed. That this plaintiff, through its agent, A. B. Robertson, instead of drawing said contract as just alleged in paragraph numbered 4, for the purpose of defrauding this defendant, knowingly, falsely and fraudulently represented to this defendant that said contract was drawn by him as agreed upon, in said paragraph numbered 4, then hurriedly laid the same onto the counter for defendant to sign, and this defendant, who was without his eyeglasses, could not, without said glasses. read said contract, and, relying upon the representations, honesty, and past fair dealings with said agent, and while defendant was in a hurry, did sign said contract without reading the same. That defendant would not have signed said alleged agreement had he known that the same did not contain the true contract of said parties. That said representations were made to deceive this defendant, and did deceive him, and he acted thereon.''

That plaintiff's agent fraudulently represented (paragraph 6) that in the event Dunn did not raise 3,000 sacks on the premises named, the plaintiff would not exact the delivery thereof, and that the contract agreed to should have contained substantially the following words:

''I have this day sold to the Interior Warehouse Company all the wheat grown for season of 1914 on the James Dunn and Edward Dunn ranches in Gilliam County, Oregon (that will be left after deducting feed and seed for 1915 crops for said ranches), estimated at 3,000 sacks. Delivery to be made in August, 1914.''

Defendant further alleges:

"That this defendant did not discover said fraud and deception until August, 1914, prior to the date he delivered said wheat, and immediately thereafter informed the agents of this plaintiff, James Walker and one Strang, that said contract as drawn could not be complied with, and that it did not express the true agreement of the parties thereto. That said agents then and there modified said contract, and then and there stated that it would be treated as if made as originally agreed upon, and requested this defendant to deliver all the wheat under the terms of the true agreement, and that further performance would not be exacted. That this defendant relied thereon, and delivered said wheat to said plaintiff in accordance with the terms of the true contract, which on account of the drought and late frost consisted of only 1,587 sacks, when in truth and in fact said land, under ordinary conditions, would have produced 3,000 sacks and more, together with feed and seed for the following season, of the kind and variety contracted for."

Plaintiff demurred to the separate answer on the ground of its insufficiency. The demurrer was overruled, and, plaintiff electing to stand thereon, judgment was rendered for defendant. Plaintiff appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Messrs. Veazie, McCourt & Veazie* and *Messrs. Shanks & Horner,* with an oral argument by *Mr. Arthur L. Veazie.*

For respondent there was a brief and an oral argument by *Mr. T. A. Weinke.*

MR. JUSTICE BEAN delivered the opinion of the court.

The issue for determination upon this appeal arises on the overruling of the demurrer. By way of pre-

liminary statement it may be said that the further and separate answers present allegations of a local custom, where crops are sold, to reserve the feed and seed for the ensuing year; of fraud on the part of the plaintiff's agent in reducing the contract to writing; of a representation made to the defendant before the writing was signed that the terms thereof would not be enforced against him, and of a subsequent waiver by agents of the plaintiff.

1, 2. The provisions of the contract set out in the complaint are definite and certain as to what was to be delivered in fulfillment thereof, and the instrument is free from ambiguity. It is therefore to be construed according to the plain, common meaning of the words used, and a custom or usage inconsistent with its terms cannot be interposed to contradict or qualify its provisions; for in such case the terms of the contract are evidence of the intentions of the parties to avoid the effect of such usage or custom. To admit proof of such a custom would be to contradict the plain stipulations of the writing: *Holmes* v. *Whitaker,* 23 Or. 319, 323 (31 Pac. 705); *Willis* v. *Lance,* 28 Or. 371, 374 (43 Pac. 384, 487); *Barnard* v. *Houser,* 68 Or. 240 (137 Pac. 227).

3, 4. It is for the court to determine to what extent, if any, the custom or usage relied upon shall modify or control the contract involved: Standard Ency. Procedure, pp. 334, 335. All oral negotiations or stipulations made between the agent of the plaintiff and Dunn, preceding or accompanying the execution of the written agreement, are merged in it, and no contradiction of its legal effect by parol stipulation preceding or accompanying its execution can be admitted. It is not alleged that there was an agreement that the plaintiff would not enforce the contract, but merely

that there was a false representation by the agent that it would not exact the delivery: *Edgar* v. *Golden,* 36 Or. 448 (48 Pac. 1118, 60 Pac. 2) ; *Tallmadge* v. *Hooper,* 37 Or. 503, 512 (61 Pac. 349, 1127) ; *Sutherlin* v. *Bloomer,* 50 Or. 398 (93 Pac. 135).

5, 6. The answer affirmatively admits the execution of the instrument set forth in the complaint, which is the basis of the action. This is not a mere admission of the signing of the paper, but that such an agreement as the plaintiff alleges to have been made was in fact executed. A written agreement, based on a consideration, cannot be questioned in a law action for alleged fraud or deceit affecting its execution, except upon a denial of its execution amounting to a plea of *non est factum,* or if it is an unsealed instrument *non assumpsit.* Where the defendant admits the execution of the agreement, the admission will bind him : *Capital Lumbering Co.* v. *Learned,* 36 Or 544 (59 Pac. 454, 78 Am. St. Rep. 792) ; *Baines* v. *Coos Bay Nav. Co.,* 41 Or. 135 (68 Pac. 397) ; *Brown* v. *Feldwert,* 46 Or. 363 (80 Pac. 414). This, however, may be a matter of phraseology, and possibly under certain circumstances might be corrected by amendment. We, therefore, pass to the gist of the allegation of fraud.

7, 8. It seems to us that the answer seeks to effect a reformation of the written instrument. At common law, according to the general rule, it is not competent for a defendant, in an action at law on a specialty, to plead that the instrument was obtained by false representations. Such a defense must be made in equity. It is otherwise where his signature is obtained to an instrument he did not intend to sign, and the fraud or deceit affects the execution thereof. In such a case the fraud can be alleged at law. There are difficulties in adjusting the rights and equities of the parties in

a court of law, and in states where, as in ours, the two distinct systems of jurisprudence, equity and law prevail, a law court usually refuses to open the question of fraud in the consideration or in the transaction out of which the consideration arises, but turns the party over to a court of equity. A court of law can hold no middle course: *Hartshorn* v. *Day,* 19 How. 211 (15 L. Ed. 605); 1 Bigelow on Fraud, p. 326; *Olston* v. *Oregon Water P. & Ry. Co.,* 52 Or. 343, 350 (96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 915).

9. In the present case the purport of the answer is that the contract is valid as to about one half of the amount of wheat mentioned. The defendant in effect pleads in paragraph 6 that prior to the signing of the alleged agreement, plaintiff's agent, A. B. Robertson, falsely and fraudulently represented to the defendant that, in the event the said Dunn did not raise the 3,000 sacks on the premises aforesaid, the plaintiff would not exact the delivery thereof. This statement tends to show that the defendant knew that the contract provided for the sale of 3,000 sacks of wheat, at least upon certain conditions, and that he did not rely solely upon the fact that the contract was drawn in conformity with the agreement as set forth by defendant. He claims that he relied upon a representation from the agent that the terms of the writing would not be enforced. This amounts to an admission that he knew the provision binding him to deliver 3,000 sacks was embraced in the contract. To express the matter in a common phrase, this admission takes all the "sting" out of the allegations of fraud on the part of the defendant.

10, 11. In construing a pleading in case of doubt, when considered on demurrer, that construction should be given to the language which is most favorable to

the opposite party and against the pleader: *Graham* v. *Merchant,* 43 Or. 294 (72 Pac. 1088) ; *Darr* v. *Guaranty Loan Assn.,* 47 Or. 88 (81 Pac. 565) ; *Fishburn* v. *Londershausen,* 50 Or. 363 (92 Pac. 1060). Where fraud is relied upon, facts showing it must be clearly alleged: *Hansel* v. *Norblad,* 78 Or. 38 (151 Pac. 964).

12, 13. This leaves the answer with a suggestion that possibly there was a mistake in the integration of the instrument. Let us be plain. We do not refer to this for the purpose of intimating that the defendant has a remedy by a suit in equity in the nature of a cross-bill to reform the agreement, similar to *Smith* v. *Interior Warehouse Co.,* 51 Or. 578 (94 Pac. 508, 95 Pac. 499), where the same form of a contract was involved. That question is not for us to determine, and depends upon facts not shown by this pleading. We mention this phase of the case to illustrate that in its present condition the answer does not. contain sufficient facts to constitute a defense to the action at law or justify a conclusion of fraud on the part of the plaintiff. Where a mutual mistake is made in the framing of a contract and no fraud appears, the remedy, if any, is by a suit to reform the written instrument. In fine, if the same facts, as presented by the separate answers, were shown by evidence and nothing more was proven, we should not be able to say that the defendant had a defense to the action.

14–16. The second further and separate answer of defendant sets up a release or modification of the contract made by certain persons alleged to have been agents of the plaintiff. There is no allegation that these individuals were general agents of plaintiff, or that they had authority to make such a release or modification, or that plaintiff knew of the proceeding. In actions by or against a principal, on contracts

executed by his agent, the contract may be declared on, either as having been made by the principal or by him through an agent. Neither of these requirements was observed by the defendant: 16 Ency. Pl. & Pr. 899. As we understand the answer, this allegation is in the nature of an accentuation of the claim that the contract was other than as written. It is not sufficient as a defense in itself. Many valuable suggestions are made in the brief of counsel for defendant, such as that:

"Managing agents or superintendents having general authority over the entire business usually have very comprehensive powers, and may do such acts as are appropriate and usual in carrying on the business" (citing Elliott on Contracts, § 2895).

Neither of the agents named is the one who executed the contract in question on the part of the plaintiff, and defendant's pleading does not show that they are either managing agents or superintendents.

The demurrer to the answer should have been sustained. The judgment of the lower court is therefore reversed, and the cause remanded for such further proceedings as may be deemed proper, not inconsistent herewith.        REVERSED AND REMANDED.

MR. JUSTICE EAKIN absent.