Argued April 4, affirmed September 28, 1972

# ASBURY TRANSPORTATION COMPANY, *Respondent, v.* CONSOLIDATED FREIGHTWAYS CORPORATION, *Appellant.*

501 P2d 321

*George M. Joseph,* Portland, argued the cause for appellant.

*Edwin J. Peterson,* Portland, argued the cause for respondent. 

HOWELL, J.

This is a dispute between two interstate trucking firms as to which firm is obligated to pay certain fuel and highway use taxes. The action was tried before the court without a jury, and a judgment was rendered for plaintiff. Defendant appeals.

Plaintiff, Asbury Transportation Company, and defendant, Consolidated Freightways Corporation, are both engaged in the business of interstate hauling. Between October 1967 and November 1968 the plaintiff and defendant executed a series of leasing agreements whereby the defendant leased 40 truck-tractors from plaintiff. The terms, which were the same for all the leases, were set out in a standard form leasing agreement prepared by defendant. Either party could terminate on 30 days' notice. The lease agreements provided that defendant would pay plaintiff 15¢ per unloaded mile and 17¢ per loaded mile driven. Settlement of accounts was to be made every two weeks.

Under an oral agreement, plaintiff provided two drivers for each unit, and the drivers were paid by defendant. Plaintiff also provided five fuel credit cards for each unit.

The single dispute in this case concerns which of the parties is obligated to pay the fuel taxes and the federal highway use taxes.

The fuel taxes, ranging from 5¢ to 11¢ per gallon, were initially paid to the various states by

either plaintiff or defendant, depending on the method of collection. In most of the states, the fuel tax is computed on the number of miles driven in the state on an average mile per gallon basis. The defendant provided the states with this information, paid the tax, and charged the amount back to plaintiff. Other states collect the fuel tax at the pump. These taxes were paid by plaintiff when it paid the credit card charges. In Wyoming the tax is assessed at the point of entry on the basis of the number of miles the unit was to be driven in the state. This tax was paid initially by plaintiff at the point of entry, repaid by defendant to plaintiff, and then charged back again by defendant to plaintiff.

As between the taxing states and the parties hereto, the defendant Consolidated was liable for the fuel tax.

The federal highway use tax is a flat rate of $210 on each unit, payable in August of each year.

Plaintiff paid the federal highway use tax and now seeks recovery of all federal highway use taxes paid by it and of all fuel taxes paid by plaintiff or charged to plaintiff by defendant.

The relevant portions of the leases regarding the fuel and federal highway use taxes provide:

"4. LICENSE EXPENSE. The parties hereto shall bear and pay all fees for * * * *Federal Highway Use Tax or other road or mile taxes,* permits and travel orders, weight taxes and wheel taxes, fines, penalties and tolls, *in accordance with the collective bargaining agreements, and any supplements thereto, to which reference is made in paragraph 10.* [Emphasis supplied.]

"5. CONTRACTOR'S EXPENSE. Subject to the provisions of paragraph 10, Contractor shall

pay and bear all maintenance and/or operating expenses of said equipment. * * *"

Paragraph 10 of the lease agreement provides that the lease is subject to the provisions of a union agreement with the Teamsters Union. Paragraph 10 of the lease states:

"This agreement shall be subject to the provisions of the Central States Area Over-The-Road Supplemental Agreement, and that certain rider thereto (to be effective September 18, 1967), between the Arrowhead Division of Consolidated and Local No. 961 of the International Brotherhood of Teamsters, which Local has its office in Denver, Colorado."

The Central States Agreement referred to in the lease provides, in Article 59, Section 10:

"The Employer or certificated or permitted carrier [Consolidated] hereby agrees to pay road or mile tax, social security tax, compensation insurance, public liability and property damage insurance, bridge tolls, fees for certificates, permits and travel orders, fines and penalties for inadequate certificates, license fees, weight tax and wheel tax, and for loss of driving time due to waiting at state lines, and also cargo insurance. It is expressly understood that the owner-driver shall pay the license fees in the state in which title is registered. All tolls, no matter how computed, must be paid by the Employer regardless of any agreement to the contrary.

"*All taxes or additional charges imposed by law relating to actual truck operation and use of highways,* no matter how computed or named, *shall be paid by the Carrier,* excepting only vehicle licensing as such, in the state where title is registered." (Emphasis supplied.)

The parties agree that in the context of the

lease agreement, plaintiff is the contractor and defendant is the carrier or employer.

The trial court found from a consideration of the entire agreement between the parties that the defendant was obligated to pay both the fuel and the highway use taxes.

The lease agreement, prepared by the defendant, provides that the entire lease is subject to the provisions of the union agreement between Consolidated and the Teamsters, and, in particular, Paragraph 4 specifically states that the federal highway use tax or other road or mile taxes would be the obligation of the parties according to the union agreement.

The union agreement provides that Consolidated, as the employer, will pay all "road or mile tax * * * weight tax and wheel tax." In addition, it also states that *"all taxes or additional charges imposed by law relating to actual truck operation and use of highways, no matter how computed or named,"* shall be paid by the carrier, which is Consolidated. (Emphasis supplied).

■ Consequently, when the lease provides that the federal highway use tax and other road or mile taxes are to be paid according to the union agreement, and the union agreement provides that defendant is to pay all taxes relating to "truck operation and use of the highways," the obligation for fuel and highway use taxes falls on defendant.

The defendant contends that the union agreement does not apply and that any references to or incorporation of the union agreement in the leases are surplusage insofar as determining liability for the fuel taxes and use taxes. In support of this argument, de-

fendant points to Section 1 of Article 59 of the union agreement which states that the agreement does not apply to equipment leased except when the owner is also employed as a driver. As plaintiff is a fleet operator and not an owner-operator, the union contract does not apply according to defendant.

It is difficult to understand defendant's position that the union agreement is completely inapplicable to the fuel and use taxes when the lease agreement specifically refers to it in several places, including that portion of the lease which deals with the expenses in question. It is true, insofar as Article 59 is concerned, that plaintiff, as a fleet operator, does not meet the definition of owner-operator. However, defendant's argument must fail for several reasons.

Initially, defendant's argument ignores the well-established rule of construction that when a reference is made in one document to another document for a specific purpose, the latter becomes part of the former for that limited purpose. *Wallace v. Oregon Engineering Co.,* 90 Or 31, 35, 174 P 156, 175 P 445 (1918); *Myers v. Strowbridge Estate Co.,* 82 Or 29, 43, 160 P 135 (1916); 17A CJS Contracts 136, § 299. Paragraph 4 of the lease agreement states that certain expenses, including the "Federal Highway Use tax or other road or mile taxes," are to be paid in accordance with the union agreement. We agree with the trial court that whether plaintiff is an owner-operator has no bearing on the incorporation of the union contract into the leasing agreement.

Furthermore, the evidence does not support defendant's argument that the union agreement has no application. Dan Roark, defendant's general manager

at the Denver terminal who signed the leases in question, testified at length during the trial. It was never his position that the union agreement was inapplicable and surplusage as now argued. He contended that the terms of the lease itself required all lessors to pay the taxes.

Also, the evidence clearly established that when defendant was seeking trucks to lease, it made leasing arrangements with both individuals and companies. The same form of lease was used with a "one-rig" operator as was used in the instant case, and defendant treated each lessor the same, irrespective of whether he was an owner-operator of one truck or a fleet operator.

If the union contract is inapplicable and surplusage as defendant contends, it would result in rendering Paragraph 4 of the lease absolutely meaningless. It would leave completely open the important question of who was to pay not only the use and fuel taxes but "other road or mile taxes, permits and travel orders, weight taxes and wheel taxes * * *," and the other items mentioned in the paragraph.

We conclude that the union contract was incorporated into Paragraph 4 of the lease agreement for the purpose of determining which party was obligated to pay the fuel and use taxes.

■■ The defendant also argues that it is not obligated to pay the fuel taxes because the fuel tax is an operating expense within the meaning of Paragraph 5 of the lease which states that "subject to the provisions of [the union agreement] the Contractor [Asbury] shall pay and bear all maintenance and/or operating expenses of said equipment." The basis of defendant's

argument is that it is the custom and practice that the owner of the equipment pay all fuel taxes.[1]

We believe that Paragraph 5 requiring plaintiff as the contractor to pay maintenance and operating expenses must be read in conjunction with Paragraph 9 of the lease, which states that plaintiff Asbury represents the equipment is in good mechanical condition and agrees to maintain the equipment in good and safe operating condition. The record shows that plaintiff did maintain the trucks at its own shop. We believe that Paragraph 5 relates to those expenses which were necessary to keep the trucks in operating condition, and not to the obligation to pay taxes.

Even if fuel taxes were considered as operating expenses, as defendant contends, the union contract, as incorporated into the lease agreements, requires the defendant to pay "all taxes and additional charges * * * relating to actual truck operation and use of the highways, no matter how computed or named."

We agree with the conclusion of the trial court that the lease agreement requires the defendant to pay both the use and fuel taxes.

[1] Two witnesses testified that it is the custom and usage within the trucking industry that fuel taxes are considered to be operating expenses. This testimony was unrebutted, and defendant cites as error the trial court's refusal to so hold.

Evidence of custom and usage is admissible in various circumstances as an aid to interpreting provisions of a written contract. ORS 41.900 (12); see e.g., Hurst v. Larson, 94 Or 211, 214, 184 P 258 (1919). However, such evidence is not admissible to contradict or vary the terms of a written contract. North Unit Potato Co. v. Spada Dist., 93 Adv Sh 1151, 1157, 260 Or 468, 490 P2d 995 (1971); Bliss v. Southern Pacific Co. et al, 212 Or 634, 640, 321 P2d 324 (1958).

In the instant case, Paragraph 4 of the lease requires defendant to pay the fuel taxes. Furthermore, the defendant's witnesses admitted that the custom and usage contradicts this provision of the written lease agreement.

■ The defendant alleged several affirmative defenses, including waiver, estoppel, accord and satisfaction, and failure to mitigate damages. All of these defenses were decided adversely to defendant. The trial court specifically stated that "none of the defenses are supported by the evidence." We mention this because the defendant now contends in this court that "the trial court did not weigh the evidence" and that the trial court ruled against defendant on these defenses as a matter of law. This is incorrect. At no time during the trial did defendant contend that the defenses should be decided as a matter of law, and the evidence for and against these defenses was argued at length before the trial judge at the conclusion of the case.

The basis for these defenses is that plaintiff continued "to perform the contract rather than exercising its 30-day termination privilege and continuing to accept without protest settlement drafts with fuel tax deductions." Defendant contends that if it had known that plaintiff would continue the leases and then claim the fuel and use taxes, it would have cancelled all the leases before it did so in December 1969.

The dispute regarding payment of the taxes began when a payment was made to plaintiff in November 1967. Roark testified that he told plaintiff and the other lessors that they were obligated to pay the fuel taxes, and if they did not like it, they could cancel the lease. Taft, plaintiff's manager, denied this statement. Taft also stated that when he complained several times about the deduction for the fuel taxes, Roark would tell him that "he would check into it." Letters regarding the dispute were exchanged in May and June, 1968. Plaintiff's president testified that after

receiving defendant's letter of June 28, 1968, he discussed the matter with the defendant's executive vice-president who stated "he would look into the matter out of courtesy to me and would advise me." Later, in February 1969, he was told by another of defendant's officials also that "he would look into it." Later he discussed the subject with defendant's president who told him "he knew nothing about it at all, did not even know a dispute existed."

The defenses upon which defendant relies all present questions of fact. *Anderson v. Laws et al.,* 176 Or 468, 478, 159 P2d 201 (1945); *Samuels v. Mack-International Etc. Corp.,* 128 Or 600, 605, 275 P2d 596 (1929) (waiver); 31 CJS Estoppel 784, § 163 (estoppel); *Lenchitsky v. H. J. Sandberg Co.,* 217 Or 483, 343 P2d 523 (1959) (accord and satisfaction); *Blair v. United Finance Co.,* 235 Or 89, 383 P2d 72 (1963) (mitigation of damages). There was substantial evidence to support the trial court's findings that defendant had failed to establish any of these defenses.

Affirmed.