Argued June 7, affirmed October 31, 1978

HUNT, *Respondent,*
*v.*
ANDERSON, *Appellant.*
(TC A 7603 03274, SC 25399)
585 P2d 1134

Thomas K. Thorpe, Portland, argued the cause for appellant. With him on the briefs was Keith R. Swensen.

Sherman B. Kellar, Portland, argued the cause for respondent. On the brief was George O. Tamblyn.

Before Denecke, Chief Justice, and Tongue, Bryson, and Linde, Justices.

LINDE, J.

## LINDE, J.

Defendant appeals from a summary judgment entered against him for the total amount due under a settlement agreement between plaintiff and defendant, plus interest, attorney's fees, and certain costs and disbursements. The question before us is whether on the record before the circuit court, viewed most favorably to the party resisting summary judgment, there was a "genuine issue as to any material fact" requiring trial and making summary judgment improper. ORS 18.105; *Forest Grove Brick Works v. Strickland,* 277 Or 81, 87, 559 P2d 502 (1977). We find no material factual issue and affirm the judgment.

The background of the underlying dispute between the parties is set forth in the settlement agreement. This document reads as follows:

THIS AGREEMENT made and entered into this 2d day of June, 1975 by and between TED H. ANDERSON, hereinafter called "Anderson", and THOMAS F. HUNT, hereinafter called "Hunt", WITNESSETH:

Prior hereto and more specifically on or about May 29, 1973, both Anderson and Hunt were employed by Hennessy and Assoc., hereafter called "Hennessy". During the time of their employment there, Hunt was the general manager of said company and Anderson was one of the employees (traders) working under the supervision of Hunt.

On or about May 29, 1973, as the result of the placement of an order through the Board of Trade by Anderson for the account of Western Wood Mfg. Co., hereinafter called "Western Wood" and John Boeggman, said Western Wood and John Boeggman suffered a margin loss of $31,626.90. Western Wood and John Boeggman refused to accept responsibility for said loss. Hennessy charged the account of Hunt for said loss of $31,636.90, and at the same time, Hunt and Anderson made a claim against Western Wood and John Boeggman for said sum.

On or about October 1, 1974, the claim against Western Wood and John Boeggman was settled for $24,000, payable in installments of $6,000 on October 1,

1974 and $4,500 on November 1, 1974, and $4,500 on the first day of each month thereafter until the full sum was paid. As the result of one payment being late, the entire balance was declared due and payable and was, in fact, paid on or about December 15, 1974. In connection with the claim and the settlement thereof by Hunt and Anderson, attorneys' fees of $3,277.65 were incurred.

Hunt has now made claim against Anderson for the following sums:

(a) the difference between the margin loss charged to Hunt's account and the settlement made with Western Wood and John Boeggman — $7,626.90;

(b) interest at 6% per annum from May 29, 1973 to October 1, 1974, on the full sum charged to Hunt's account — said interest amounting to $2,542.26;

(c) attorneys' fees and costs incurred in handling said claim — $3,277.65;

Anderson has agreed to pay said sums totalling $13,446.81 to Hunt on the following terms and conditions and in full satisfaction of any and all claims Hunt has or may have against Anderson with respect to said transaction and claims:

1. Anderson agrees to pay the sum of $13,446.81 to Hunt together with interest at six percent (6%) per annum from October 1, 1974, until paid.

2. Said moneys shall be paid in annual installments of not less than $2,400; and in addition thereto interest shall be payable annually. The first annual installment, plus interest, shall be due on or before January 1, 1976.

3. Interest shall be charged on the unpaid balance only. As each payment is made, it shall be applied first to interest, then to principal.

4. Anderson anticipates making payments from time to time and has already made payment to Hunt of the following sum, which Hunt hereby acknowledges receiving:

$400 — December, 1974

5. In the event of the death of Anderson, no further sums will be due and owing on this obligation for the reason that each of the parties agrees that this is an obligation personal to Anderson, and the settlement of Hunt's claim as herein embodied does not contemplate

[ 228 ]

any liability on the part of Anderson's estate or Anderson's wife and family. However, in the event of the death of Hunt, any sums due by Anderson shall be paid to Hunt's surviving children, or in the event of their death, to the estate of Thomas F. Hunt.

6. ~~In consideration of the above promises of Anderson, Hunt hereby releases Anderson from any and all claims which Hunt may now or in the future have against Anderson with respect to said above described transaction.~~

If any annual installments of principal or interest are not paid on or before the date due, all principal and interest may become immediately due and collectable at the option of Hunt. If Hunt is required to place this Agreement in the hands of an attorney for collection, Anderson agrees to pay Hunt's reasonable attorney's fees and collection costs, even though no suit or action is filed hereon; however, if a suit or action is filed, the amount of such reasonable attorney's fees shall be fixed by the Court in which the suit or action is tried, heard or decided.

IN WITNESS WHEREOF, the parties have executed this Agreement this 2d day of June, 1975.

s/ TED H. ANDERSON
TED H. ANDERSON
s/ THOMAS F. HUNT
THOMAS F. HUNT

■ Plaintiff's complaint alleged that defendant defaulted on the payment due under this settlement contract on January 1, 1976, causing the entire principal, accrued interest, and attorney's fees to become due. Defendant's answer admitted signing the agreement but denied that it was legally binding. As defenses he alleged, first, that plaintiff gave no consideration for defendant's promise to make the installment payments called for in the agreement; second, that he signed the agreement under duress because of the fear of losing his employment; third, that the agreement was procured by fraudulent misrepresentations of plaintiff; and fourth, that the terms

[ 229 ]

of the agreement are unconscionable. Defendant also counterclaimed for $1,100 already paid on the settlement.

Plaintiff denied these allegations and moved for summary judgment, asserting the absence of any material issue of fact. In answer to this motion, defendant filed affidavits by himself and by Virginia R. Renwick, an attorney whom defendant employed to prepare the settlement agreement. Also before the court was defendant's deposition taken by plaintiff. We refer to these documents in examining whether they showed a genuine issue of material fact with respect to any of the four defenses stated above.

*Inadequate consideration.* Defendant contends that a factual issue of the parties' intentions arises from the unexplained obliteration of paragraph 6 of the agreement, citing Renwick's affidavit that without the recital of consideration in that paragraph the contract would be invalid. The trial court concluded that this was an issue of law, not of fact, and that irrespective of paragraph 6 the provision that Anderson's payments were were to be "in full satisfaction of any and all claims Hunt has or may have against Anderson with respect to said transaction and claim" sufficiently supported an enforceable settlement contract. We agree with this conclusion. In the presence of the quoted language, the mere unexplained striking out of paragraph 6 does not suffice to raise an inference that the parties could have intended an illusory settlement which would not release Anderson from a subsequent claim. *Cf. Perkins v. Standard Oil Co.,* 235 Or 7, 16, 383 P2d 107 (1963).

■ *Duress.* Defendant's claim of duress rests exclusively on the relationship between the parties as office manager and employee and on defendant's fear for his future in the commodities trading business if he did not accede to plaintiff's demand. There is no claim of

[ 230 ]

threats or physical coercion.[1] Defendant testified in his deposition that he felt a sense of "pressure" and "intimidation" from Hunt's demands but also that he "was never intimidated where I was threatened with the loss of my job." He also testified that Hunt told him not to draw up any terms of payment "that you can't live with," and that Hunt expected him to consult an attorney. The settlement agreement was in fact drawn up by defendant's attorney to defendant's specifications, although the attorney was not asked to advise him with respect to the underlying obligation. Under these circumstances, the circuit court did not err in holding that there was no issue of fact sufficient to raise a potential defense of duress against the agreement. *Cf. Jones v. Jones,* 276 Or 1125, 1131, 557 P2d 239 (1976).

■ *Fraudulent misrepresentations.* Defendant claims that he signed the agreement in reliance on representations by plaintiff concerning an industry custom of holding account executives responsible for their customer's deficits, and that there is no such industry custom. Since the present action does not concern the original obligation but the settlement contract, the relevant fact is not the presence or absence of such a custom but whether plaintiff fraudulently induced defendant to sign that contract. However, according to defendant's deposition, Hunt had a good faith belief that defendant did owe the obligation settled by the contract.[2] Also, defendant had the opportunity to

---

[1] On appeal, defendant briefs the issue in terms of "undue influence," based on defendant's "trust" in plaintiff's greater knowledge and experience of the customs and obligations of commodity brokers. However, defendant did not plead a defense of "undue influence."

[2]
Q  Now, are you saying that Mr. Hunt knew all along that the policy, as far as Hennessy & Associates, was that the salesmen were not responsible for customer deficits?
A  No, I'm not saying that at all.
Q  You don't think Mr. Hunt was fraudulent, in any of these representations?
A  No, I don't think he was fraudulent.

obtain legal advice before acceding to this obligation, as stated above, but deliberately chose not to do so in order not to upset the prospects for his continued employment. In this situation, while there is a disagreement between the parties whether such an obligation is customary in the trade, the question becomes immaterial to any issue of Hunt's alleged fraud. We agree with the circuit court that the issue is disposed of by the defendant's deposition.

*Unconscionable provisions.* Defendant contends that the settlement contract is unconscionable as the "aggregate result of the failure of consideration, fraudulent representations and duress and undue influence." He does not contend that the terms of the settlement are themselves unconscionable in the absence of these asserted circumstances of its formation. Since we have agreed with the circuit court that the record left no genuine issue of fact material to a decision on the first three defenses, the claim that the agreement was "unconscionable" was also properly decided on summary judgment.

In effect, defendant has attempted to reopen the question whether he was responsible for paying the customer deficits by defending against his settlement agreement in the form of assertions that this agreement was obtained by fraud and duress. However, his own statements negate factual elements essential to these defenses. Under the circumstances, those facts

---

Q  Did you read this answer before you signed it, Mr. Anderson?
A  Yes, I did. I don't know exactly what fraudulent means, but I don't think he was fraudulent.

. . . . .

A  Well, I don't know about the exact word fraudulent in the lawyers' vernacular. I believe Mr. Hunt thought I owed him the money, and I think I don't. And he didn't come and fraudulently, illegally, quotes, state that I owed him the money. He just told me I owed it to him. . . .

While a lay witness will not be held to knowledge of the legal elements of fraud, it is apparent that defendant does not assert that Hunt intentionally lied to him about who was liable for customer deficits.

about which there is a disagreement between the parties are not material to the decision, and the summary judgment was properly granted.[3]

Affirmed.

---

[3]Defendant also assigns as error the inclusion in plaintiff's cost bill of the expenses of a deposition taken by plaintiff to preserve testimony of an out-of-state witness. The trial court acted well within its discretion in concluding that this was a necessary expense. *Gleason v. International Multifoods Corp.,* 282 Or 253, 261, 577 P2d 931 (1978).