# HUMER,
## *Appellant,*
*v.*
# LOCAL 3-12, IWA, AFL-CIO, et al,
## *Respondents.*

### (No. 78-905 E, CA 16890)

621 P2d 638

Glenn D. Ramirez, Klamath Falls, argued the cause and submitted the briefs for appellant.

Rick W. Roll, Tillamook, argued the cause for respondent Local 3-12, IWA, AFL-CIO. On the brief was David R. Vandenberg, J., P.C., Klamath Falls.

Robert Trotman, Klamath Falls, argued the cause for respondent Weyerhaeuser Company. On the brief were Stanley C. Jones and Giacomini, Jones & Associates, Klamath Falls.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Plaintiff filed this action to enforce certain seniority provisions in a working agreement between defendant union and defendant employer. Defendants answered and subsequently filed motions for summary judgment on the grounds that: (1) there is no material issue of fact, because plaintiff's complaint fails to set forth a cause of action under the working agreement, Article IX, Section G; and (2) that plaintiff has failed to exhaust his remedies through the grievance procedure established in the working agreement. The trial court granted defendants' motion for summary judgment, holding that there was no material issue of fact concerning the operation and applicability of Article IX, G, of the working agreement. Plaintiff appeals this ruling.

Regarding seniority, Article IX, Section G, of the working agreement provides:

"Any employee who is promoted to a supervisory position shall, *in the event of curtailment or change of plans by the Company,* be replaced in his former position with full seniority accumulation for time spent as a supervisor. The Company has the right to pick or change any supervisor without reservation.

"If a supervisor requests to return to the bargaining unit *within 24 months* after taking a supervisory job, he will return to an entry level job and retain Company and departmental seniority including full seniority accumulation for time spent as a supervisor. If he requests to return after 24 months, he retains only Company seniority."

■ Plaintiff alleged in his affidavit in opposition to defendants' motion for summary judgment that he was removed from his supervisory position because in "July and August of 1978, there was a change of plans by the Weyerhaeuser Company, in which employes were shifted to different positions, including Plaintiff." He further averred that at that time he was told by the regional vice president of the company that he had not been fired from his position. Contrarily, defendants' affidavit in support of the motion stated that plaintiff had been removed from his supervisory position solely because of the quality of his work and, hence, was not entitled to seniority under the working agreement. From this, it is apparent that, viewing the

record most favorably to the party resisting summary judgment, there was a genuine issue as to a material fact as to whether plaintiff was fired or had been removed from his supervisory position due to a change of the employer's plans. The granting of the motion for summary judgment was improper on the grounds stated by the trial court. *Hunt v. Anderson,* 284 Or 225, 227, 585 P2d 1134 (1978); former ORS 18.105 (repealed by Or Laws 1979, ch 284, § 199.

■    Defendants, however, set forth another ground in favor of their motion for summary judgment. Defendants contend that plaintiff is not entitled to judicial relief for alleged violations of the working agreement because he has failed to first exhaust his remedies under the grievance procedure established in the agreement.

In *Gilstrap v. Mitchell Bros. Truck Lines,* 270 Or 599, 605-06, 529 P2d 370 (1974), *cert den* 421 US 1011 (1975), the Supreme Court was presented with the question of whether plaintiffs, union members, were barred from seeking recourse in the courts because they had failed to exhaust mandatory grievance procedures provided for in the collective bargaining agreement. The court stated:

> " * * * In *Textile Workers v. Lincoln Mills,* 353 US 448, 451, 77 S Ct 912, 1 L Ed 2d 972 (1957), the United States Supreme Court held that § 301(a) of the Labor Management Relations Act of 1947, 29 USC § 185(a):
>
>> " ' * * * authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements. * * * ' 353 US at 451.
>
> "State courts have concurrent jurisdiction with federal courts in applying this 'body of federal law.' (Citations omitted.)
>
> "The law is well settled that in the ordinary situation an employee who is subject to a collective bargaining agreement which contains mandatory grievance procedures must first look to those procedures as the vehicle for redress. One who fails to exhaust those procedures will find access to the courts barred. * * * "

The working agreement in the present case states:

"*It is the intent of this Article that all disputes, grievances or complaints arising under or out of this agreement shall be handled amicably* without strikes, lockouts or other stoppages of work. Except as otherwise provided herein, *should there be any dispute or complaint as to the interpretation of any of the clauses of this agreement or any grievance arising out of the operation of this Agreement* except in cases of discharge or suspension, *the employee* or employees concerned *shall continue to work* under the conditions existing prior to the time the dispute, complaint, or grievance arose, *and such dispute, complaint or grievance shall be taken up at Step 1 with the foreman by the Camp Committee within three (3) days,* subject to the provisions of Section 9-a of the Labor Management Relations Act of 1947. No Union activities shall be undertaken during work hours."[1] Working Agreement, Article III, A. [Emphasis supplied.]

Therefore, when a grievance arises under the working agreement, an employe must continue to work and must take his grievance to the foreman within three days. The

---

[1] Article III of the working agreement further provides:

"B. If no satisfactory settlement is made at Step 1, the Camp Committee shall, within three (3) days, refer the question and arrange for a meeting with the Company Committee at Step 2. The Camp Committee may call in the General Committee. Upon request of the Company, the Union will present the grievance in writing. Upon request of the Union, the Company will present any grievance it may have in writing.

"C. If no satisfactory settlement is made at Step 2, the questions shall be taken up at Step 3 with the Area Manager by the General Committee and the representative or representatives of the Union, who shall be an officer or officers of the Union, or any other person or persons, elected by the Union from its membership or officers or duly qualified agents. The Company may call in any person to assist it in negotiations for the settlement of any matter in dispute.

"D. Any settlement arrived at by the two Standing Committees at Step 2, or in the event they are unable to agree, by the Area Manager and representative or representatives of the Union at Step 3, shall be accepted by and be binding upon the Company, the Union and the employee or employees concerned, subject to the approval by the Union and the Company respectively.

"E. Any grievance not satisfactorily settled at Step 3, may be appealed by either party within ten (10) days of final disagreement at Step 3, by sending written notice to the Area Manager and to the President, Western States Regional Council No. 3, IWA, who shall act or designate a representative to act in their behalf within ten (10) days from the time written notice of the grievance is received by them. Any settlement arrived at by them shall be referred to the Union membership for acceptance or rejection."

three-day limitation period logically implies that the employe has three days *after* the grievance arose within which to present his grievance to the foreman.

Plaintiff's affidavit of January 25, 1980, states that in the first part of August, 1978, he was shifted from his supervisory position to a different position. He averred that he was told by the regional vice president of defendant employer that his seniority would be determined after his August vacation,

> "but that upon returning to work on August 28, 1978, Plaintiff was given a position in an area where senior men usually work, to wit, on the left side, at which time, he requested the resolution of possible question of seniority with the foreman, Mr. Bill Montgomery, as required under Article III, A, of the working agreement; that they understood that the situation would follow precedent, in that all prior supervisors, removed from their supervisory positions, by the Weyerhaeuser Company, had been returned to full company and departmental senioritys [*sic*], under Article IX, G. and that it appeared that both the company and the union officers would be agreeable that this would be the Plaintiff's situation; that *in October of 1978, Plaintiff was sent to the east side* from the west side, *as a junior employee,* by the Weyerhaeuser Company, on the basis of some unrecorded decision arrived at between the Defendant, Local 3-12, and the Weyerhaeuser Company, *indicating a* slight [*sic*] of hand *loss of Plaintiff's departmental seniority, at which time, Plaintiff filed this action,* for restoration of same." (Emphasis supplied.)

■ ■ The term "grievance" as used in collective bargaining agreements is not a term of art having a connotation different from its meaning in ordinary use. *Butte Miners' Union No. 1 v. Anaconda Co.,* 159 F Supp 431, 435 (D. Mont. 1958), *aff'd,* 267 F2d 940 (9th Cir 1959). Although plaintiff averred that in August, 1978, he discussed the "possible question of seniority" with his foreman as required by Article III of the working agreement, at that time plaintiff had not lost his seniority and, therefore, he did not have a grievance. Plaintiff's grievance regarding his seniority with the company did not arise, according to his affidavit, until October, 1978, when he actually lost his departmental seniority. It was at this point that, under Article III, Section A of the working agreement plaintiff

had three days within which to take up the grievance with his foreman. Instead plaintiff filed this action. There is nothing in plaintiff's affidavit showing that he exhausted the remedies provided in the working agreement with respect to the October grievance. He is consequently barred from seeking recourse in the courts. Moreover, while there are exceptions to the rule that mandatory grievance procedures must be exhausted before resort to the courts, *Vaughn v. Pacific Northwest Bell Telephone,* 289 Or 73, 85, 611 P2d 281 (1980); *Gilstrap v. Mitchell Bros. Truck Lines, supra,* plaintiff's case does not fall within any of these exceptions.[2]

Plaintiff's other assignments of error do not merit discussion.

Affirmed.

---

[2] In *Vaughn v. Pacific Northwest Bell Telephone,* 289 Or 73, 85, 611 P2d 281 (1980), the Supreme Court listed the three exceptions to the rule of exclusivity, as enunciated in *Gilstrap v. Mitchell Bros. Truck Lines,* 270 Or 599, 529 P2d 370 (1974), *cert den* 421 US 1011 (1975):

" * * * The court reviewed three recognized exceptions to the rule of exclusivity: (1) when the union breaches its duty of fair representation, 270 Or at 607 (cf., *Vaca v. Sipes,* 386 US 171, 87 S Ct 903, 17 L Ed2d 842 (1967); (2) when recourse to grievance procedures would be futile, 270 Or at 612; and (3) when the employer repudiates or is otherwise estopped from relying on the grievance procedures, 270 Or at 612, n. 8. * * * "